IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| ROBERT H. HENRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-4113-CV-C-NKL |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Pending before the Court is Robert Henry's ("Henry") Motion for Summary Judgment [Doc. # 6]. Henry seeks judicial review of the Commissioner's denial of his request for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* The Court finds that the Administrative Law Judge's decision was supported by substantial evidence in the record as a whole.

The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Following a review of the entire record, the Court affirms the ALJ's decision.

**I. Background**

Henry filed his application for benefits on January 24, 2002, wherein he alleged an

---

[1] Upon review of the record and the law, the Defendant's position is found to be persuasive. Much of the Defendant's brief is adopted without quotation designated.

1

onset date of July 25, 2000. Henry averred that his disabling impairments were fibromyalgia, depression, Raynaud's Disease, herniated disc and back problems, degenerative arthritis in the knees, and foot problems. Henry was fifty-six years old when he filed his pending application for benefits.

### A. Treatment During the Relevant Time Period

For the reasons more specifically set forth in Defendant's brief--which are unrefuted by Henry--the relevant time period for assessing Henry's disability status is from July 25, 2000 (the alleged onset date) and December 31, 2000 (the last date that Henry was insured for purposes of his Title II application). Therefore, the Court will look only to those impairments and medical records set forth during that time period.

Both prior to and subsequent to the relevant time period, Henry had a significant history of substance abuse treatment. His medical records reflect that he battled with addictive behaviors throughout these time periods.

On April 5, 2000, Henry was seen at the VA Hospital complaining of severe depression. (Tr. 333.) He had been sober for approximately ten months, but he reported increased depression during the previous four weeks. It was noted that Henry had prior diagnoses of alcoholism, hypertension, chronic pain with Raynaud's disease, tobacco abuse, impotence, and depression.

On May 2, 2000, Henry had been sober for almost a year. He reported intermittent depression but he had not previously been taking medication for his condition. (Tr. 329.) Henry was prescribed an anti-depressant and he reported that he "feels much better."

On June 26, 2000, Henry was again seen at the VA and he reported drinking 18 beers per day for two weeks and he had used crack cocaine. (Tr. 322.) He had a blood alcohol reading of .212 and he was hospitalized for detoxification. Henry was released a few days later on June 30 with diagnoses of alcohol dependence and depressive disorder, in addition to hypertension, chronic pain with Raynaud's, impotence, status-pos knee surgery, and oral candidiasis.

On November 14, 2000, Henry was seen on follow-up and he reported that he had not drunk alcohol since July. (Tr. 291.) On November 27, 2000, Henry reported low energy levels, but that his anti-depressant medication was working better. (Tr. 289.)

During the relevant time period and the time preceding the relevant period, Henry's medical records reflect that his global assessment functioning ("GAF") was always assessed as being at least 50.

### B.  Treatment After the Relevant Time Period

Henry's treatment at the VA continued after December 2000. In January 2001, Henry was not as depressed as before and he was doing well on his anti-depressant medications with no side effects. (Tr. 288.)

Henry was not seen again at the VA until November 2001. (Tr. 278.) Henry had relapsed during the intervening time period and he admitted taking cocaine, heroine, and alcohol during the past six months. Henry also had skin abscesses from IV drug use and he was admitted for one week for detoxification. After his release from the hospital, Henry abstained for seven days, but at an appointment in December 2001, he reported

that he had resumed alcohol and heroin use. Henry's treatment at the VA for substance abuse continued throughout 2002.

### C. Physicians Evaluating Henry

#### 1. *Daniel Casto, M.D.*

Dr. Casto treated Henry on three occasions in 2002. In a letter dated June 5, 2002, Dr. Casto stated that he did not have any of Henry's prior medical records and he could not substantiate the medical history that Henry was reporting. Moreover, Dr. Casto's letter does not reflect the objective results of any of his examinations of Henry; instead, it merely recounts the symptoms that Henry reported. Nonetheless, Dr. Casto opined that Henry was unemployable for the next twelve months. (Tr. 436.)

#### 2. *State Agency Consultants*

Two state agency physicians evaluated Henry. The first evaluator concluded there was insufficient evidence to determine whether Henry had a disabling impairment during the relevant time period. (Tr. 437) The other evaluator stated that "[t]his is a tough and complicated case." (Tr. 458.) Nonetheless, the second evaluator pointed out that Henry's chart contains no indication of fibromyalgia and his examination revealed no joint problems despite complaints of knee pain. The evaluator concluded that his knee problems "had been corrected . . . and should be considered non-severe." The evaluator categorized Henry's credibility as "practically nil."

#### 3. *Gregory Zolkowski, D.O.*

Henry began his treatment with Dr. Zolkowski in 2003. Although it is outside the

4

scope of the relevant time period, Dr. Zolkowski was the only physician to submit a Medical Source Statement ("MSS") regarding Henry's impairments. (Tr. 505.) Dr. Zolkowski opined that Henry had an ability to lift up to 50 pounds, but he was limited in his ability to walk due to shortness of breath. Furthermore, Dr. Zolkowski opined that Henry (1) had no limitation in the ability to sit or stand; (2) could not repeatedly push or pull; (3) could never climb; and (4) could occasionally perform other postural activities.

## II.     Discussion

### A.     Henry's Substance Abuse

Although Henry's brief is unclear, it appears that the only grounds for reversal asserted by Henry is the ALJ's alleged error in how she considered Henry's substance abuse and its impact on his application for benefits.

According to the Act, "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(J). Drug addiction or alcoholism is "material" if the individual would not be found disabled if drug or alcohol use were to cease. 20 C.F.R. § 416.935. Henry bears the burden of proving that his substance abuse was not a contributing factor material to his alleged disability. *Vester v. Barnhart*, 416 F.3d 886, 888 (8th Cir. 2005); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).

The analytical framework that an ALJ must follow in cases involving a claimant's

substance abuse is as follows: (1) the ALJ must evaluate the claimant's substance abuse using the regulatory procedures; (2) the ALJ must evaluate the claimant's residual functional capacity ("RFC") when considering the use of alcohol; (3) if the claimant is found to be disabled, then the ALJ must evaluate what limitations would remain in the absence of the effects of the claimant's substance abuse. *Brueggemann v. Barnhart*, 348 F.3d 689 (8th Cir. 2003).

In the instant case, the ALJ determined that Henry was not disabled during the relevant time period, even factoring in his substance abuse. Henry argues that the ALJ found that his drug and alcohol abuse was a material contributing factor to his disability, but this is incorrect because the ALJ did not find that Henry was disabled nor did she make a determination about the impact of his substance abuse. Such a finding was unnecessary under the analytical framework set out above and there is no indication that the ALJ's reasoning was flawed or inconsistent with the guidelines.

The ALJ's determination that Henry was not disabled during the relevant time period is supported by substantial evidence in the record. The medical records reflected only minimal impairments, which were being satisfactorily treated with prescription medications. But for a minor relapse in his substance abuse in June 2000, the record before the Court reflects that Henry's functioning was not substantially impaired. Therefore, the ALJ's determination that Henry was not disabled during the relevant time period is supported by substantial evidence in the record.

**B.     Henry's Other Challenges to the ALJ's Opinion**

Henry passively asserts that the ALJ also erred when she applied the mental health guidelines and when she asked the vocational expert at the hearing hypothetical questions about Henry's ability to work. Although Henry references these purported deficiencies in the ALJ's opinion, he does not set out how the ALJ erred or even reference the ALJ's opinion. Therefore, there is no grounds for finding in favor of Henry on these bases and the Court will not reverse on these bases.

### C. Henry's Subsequent Diagnoses

Finally, Henry implores this Court to consider his diagnoses for schizoid personality disorder and antisocial personality disorder that were diagnosed in August 2004. Henry argues that this is newly-discovered evidence that was not available to the ALJ during the hearing, which was held in January 2004.

First, the evidence is outside the parameters of the relevant time period. Second, the additional evidence was not presented to the Appeals Council, which did not issue its opinion until early 2005. In fact, the record does not reflect that Henry ever attempted to supplement the record before the Appeals Council. Therefore, the Court will not consider the additional evidence herein nor will it remand this matter for additional consideration.

## III. Conclusion

Accordingly, it is hereby

ORDERED that Henry's Motion for Summary Judgment [Doc. # 6] is DENIED. The decision of the Commissioner is affirmed.

7

s/ Nanette K. Laughrey
					NANETTE K. LAUGHREY
					United States District Judge

DATE: November 9, 2005
Kansas City, Missouri